Please be seated. Good morning. Madam Clerk, please call the first case. 113-1705, Village of Oak Lawn v. Marks and Fields. Before we begin today, you'll notice that Justice Hoffman is not here. He will not be here for the morning session. And he does have the full benefit of the oral arguments. They are being recorded and all of us have the benefit of the oral arguments. He has the briefs. He will be fully informed of your oral argument and will be a full participating member of this Court in deciding the cases presented today. Thank you. Please proceed. Thank you. May it please the Court, I'm John Campbell here on behalf of the Village of Oak Lawn on appeal from the Circuit Court. Good morning, Mr. Duda. We appealed the Circuit Court decision after they reversed a Commission decision which had denied TTD benefits to a firefighter, Mr. Cesario. In summary, the accident is not in dispute. Benefits were paid. The man had surgery to his shoulder and was recovering. In November of 2010, I'm sorry, 2009. Mr. Duda, I have a question. Yes. Where is our jurisdiction here? Is there a final order? There was a final order. Initially, the Court had made a remand. I believe Mr. Duda and I had worked together to agree that other issues other than this central issue that we have briefed would be final. There were no other issues to be remanded or determined. So we asked the Circuit Court to acknowledge that. And so it is final because there was nothing else for that. How did the Circuit Court acknowledge that? I think it was their last order that was entered, and there was a series. We had gone after the decision was rendered. We had gone in by agreement, and I believe it's part of my appendix, and I didn't have that handy, but I could pull it out. If it is a concern, Your Honor, I will address it. But here's the issue. Yes. A judgment is final if it disposes of some definite or separate part of the controversy, which you understand that the parties, even the Court, by agreement, can't confer jurisdiction on this Court if the order is not final. It doesn't matter whether you have 304A language or not. So I'm trying to figure out, it seems like this is a non-final order. Okay. Tell me why it's not. Okay. And that was the concern. Mr. Duda and I had spoken, my opponent, on this after the decision. And as sometimes is the case with work comp decisions, there will be a remand, but the remand is more or less a function of certifying what the Circuit Court had said, and then you start the process of going then back to the Circuit Court, only to arrive back here. Did the Circuit Court remand this to the Commission? I think initially either it was explicitly stated or it was, it appeared so. And so we thought, well, is there any reason to go back to the Commission for a further determination after the Circuit Court rendered this decision? And we believed there was nothing to be gained from that. So we asked the Court if they could reconsider an issue of what we call final order so we could appeal here, because the issues that we were going to address would be the same regardless if we went back to the Commission. The Circuit Court vacated its order remanding it to the Commission? I believe they vacated their original order and reissued a second order, but again, I'd have to pull those out. Do you have them handy, Mr. Duda? Yes, so that courtesy of the Court, you can find the final order, appendix page 18. And it's the order vacating the original order and remanding this matter for hearing on further DPD vacancy and permanency, but attempting to preserve jurisdiction for the Circuit Court. It's on appendix 18 of the Act, element 3. So it was remanded for those other issues, right? Yes. So how do we have jurisdiction? I'll submit to you, Mr. Duda, I don't want to speak for him, but there is nothing else to be decided in terms of further benefits by the Commission if it were to be remanded down to them. So, you know, to come back down to the Commission to only have them effectively, by order of the Circuit Court, say, well, we're going to have to adopt the Circuit Court decision, and then go back to the Circuit Court and then come back here. Well, does it happen in a lot of cases? It probably does, Your Honor. Sometimes, though, the remand is for a further determination of maybe a period of TTD or a court. It's some kind of a mathematical calculation only, as the cases say. That's not the issue here. You've got some other things beyond that here, don't you? Well, certainly on the merits we do. There's no question. But based on the Circuit Court decision, there was nothing they were saying to the Commission, go back and reconsider this element or that element or a further determination of a period of benefits under the Act. And without that, Mr. Duda and I said, well, we're going to the appellate court one way or the other on this case. Let's – So we'll just take the cooker and pass it. Well, I think you might find out that there's no jurisdiction there. There's four-lane highways and two-lane highways. Okay. It was all – by no means were we trying to skip steps. It was for judicial efficiency. I think you sincerely tried to do that. But the overarching principle always is you can't confer jurisdiction, the circuit can't, it either exists or it doesn't. Nobody can confer jurisdiction on the court. Okay. I certainly understand that. At minimum, then, I'll leave you with this. And I would – if I may. It's all in your argument. Don't argue with that issue. Sit down. No, just on that note, to the extent there is a final order as imperfect as it is in the chronology of orders, I would ask that you adopt that one and allow us to argue this case accordingly, because I think we'd be here in a year arguing the same points. So – And you may be. Okay. I'm sorry. And you may be. All right. Understood. Understood. Okay. So, to the case at hand. The gentleman, Mr. Cesario, undisputed accident. He has surgery and the benefits are being paid. At some point, he's offered light duty at the Village of Oak Lawn. He works for two months and sits down with the fire chief and is offered additional light duty. And he says, you know what? I'm declining it. I'm going to elect some vacation in sick bay. And the chief and the village made it very clear, well, if you don't work light duty, we're not going to pay you any salary or any benefits, right? Any TTD benefits, of course, from the work compound. So the objection was raised that, hey, there's a collective bargaining agreement in play and there's a public labor relations act that compels – and this is the argument of Mr. Duda – that compels the payment of TTD because Mr. Cesario doesn't have to accept that light duty offer. It has to be part of something that was collectively bargained for. The response of the village was, well, wait a minute. Maybe Mr. Cesario doesn't have to take the light duty. And I think that's correct. Actually, no one in the state of Illinois or anywhere in the world has to accept light duty. But if you don't, you don't get TTD under the Illinois work compact. And even recent case law certainly maintains that holding, despite some other attacks on the suspension of TTD that we've seen in recent cases. Certainly the courts continue to hold, and interstate scaffolding, as I heavily cite, continues to maintain that central holding under the work compact. If you're offered work and you refuse it, you're not entitled to TTD. Was there a collective bargaining agreement here? There was, yes. And what did that say about light duty? Okay. Well, oddly enough, it doesn't say anything about TTD. It does address light duty. And it explains that a light duty – it doesn't actually address a light duty offer. It says light duty exists if the union and the worker agree. Right? Fair enough. He has to agree and the union has to agree. And I'll get to the union, whether they agreed or not, in a moment. But it doesn't speak to whether TTD can be paid. Again, I'll go back to my point I made a moment ago. I understand entirely that the man doesn't have to. He can cite the CBA and say, I don't have to work. Okay. I understand that. He wasn't fired. We didn't take any adverse action against him at all. Okay. You're citing the collective bargaining agreement and you're not coming to work. We're just not paying you TTD, sir. And by the way, when he went to his meeting in January and he decided not to have – to elect light duty any further, he didn't cite the collective bargaining agreement and say, I can't work. I'm not supposed to work, which is, I think, what Mr. Duda would have you believe. He simply said, I'm not doing this. I'm going to elect my vacation and sick pay. Okay. That's fine. We understand what you're doing. And again, adverse employment action wasn't taken against him. Mr. Duda would like the collective bargaining agreement to be interpreted in this comp case to suggest that TTD must be paid because Mr. Cesario had that option to return to work or not. I submit to you, number one, the CBA interpretation is not for the commission's jurisdiction at all or their purview. It's a work comp case under the Work Comp Act, and if interstate scaffolding and recent cases along those lines are clear, we are not to get into wrongful discharge issues, even criminal acts of workers, right? The recent decision of the Matusia case in this court says, listen, whether somebody did something to get fired or whether there's employment law issues or anything else is not the purview of the Work Comp Commission. Interstate scaffolding is very clear about that. So I'm submitting to you today that under the Work Comp Act, you consider the very narrow elements. Was work offered? Yes, it was. Is it refused? Yes, it was. Then you don't collect TTD. Now, Mr. Duda will step up in a moment and say, well, it was a sham job offer, or it wasn't really a job offer. It's not real because, again, of the CBA and their inability to offer work. Well, the cases he cites, we've got to be careful here, the cases he cites about a sham job offer are those, I think it was Reliance and Yellow Freight. They're cases where employers appear to be truly offering jobs just to benefit themselves. In other words, we're going to give you a job as a, you know, watching paint dry or something silly, or we're going to give you a job that pays far more than an ordinary job in that capacity is worth just to avoid higher exposure in the case. Okay. In those cases, that's a sham or a kind of a phony job offer. But look at Mr. Cesario's own testimony in this case about what he did on light duty. Well, let me ask you sort of a blunt question. Yeah. But can the terms of the CBA trump the Workers' Compensation Act with regard to TTD payments that we? I'm arguing that it cannot, even if it were to speak to TTD. I'm arguing that it cannot. You have any case files? I'm arguing the interstate scaffolding that emphatically says that, you know, the work comp commission is a statutory remitter under the commission. It's an administrative agency without general or common law powers. Claimants entitlement to TTD is governed by the Workers' Compensation Act, and the commission is limited to those powers granted by the legislature. That's from interstate scaffolding. I'm following that rule by arguing that's what we consider in a work comp case, in a workers' compensation administrative review here on appeal, in a workers' comp act statute that applies, and we don't consider the CBA. But I digress for a moment, and I'll consider the CBA. It doesn't speak to TTD at all. Even if we were going to consider the collective bargaining agreement and say, hey, you know, that offer of work, I don't know if it's valid or if it was supposed to be made. Let's be careful. The CBA, and by the way, we only have two pages of it. We don't have the entire collective bargaining agreement, which, mind you, if we did and I did ask on a rule of completeness, I objected to the admission of the two pages that were admitted, but so be it. The case proceeded. But you bet dollars with donuts, a CBA has an exclusive remedy provision, doesn't it? We don't know that because we don't have the complete document. But if we're going to start arguing the CBA, let's argue the entire document and what controls it. And that issue under the CBA should be addressed in the exclusive remedy provision of that. This is for work comp benefits, and that's why we're here today, and I'm arguing the work comp statute. All right? The CBA didn't discuss, and there's no dispute. I argued, regardless of the two pages we have and we're limited on the CBA in terms of what it actually says, there's been no rebuttal or argument to suggest that it would address TTD. What it doesn't say, which is what I think Mr. Duda wishes it said, is that the employer can't offer work. It doesn't say that. It says that everyone has to agree whether or not there could be light duty. Okay. I'm saying, okay, well, we don't have to agree, but we don't also have to pay you TTD. And even on that point, though, let's look at this for a second. Was the union really objecting to light duty here? Well, Mr. Lance first started, he's the union rep that testified. He had a letter that said, there shall be no light duty for firemen. One of my first questions to him on cross was, don't you have other firemen on light duty? Oh, yeah, we do. And they work longer than this 45-day limit that is alleged, don't they? Oh, yeah. Well, that's different facts, different situations. I understand. But firemen work light duty and they work it for prolonged periods. The fire chief testifies. He says, we have light duty and we have it for prolonged periods. We had it for Mrs. Cesario at all times. So we can't say that it doesn't exist or that somehow it vanishes. I think it was a term of art used in my opponent's brief because of a collective bargaining agreement. It doesn't vanish. It's there. And in my reply brief, I make, I think, a very important point. If we're going to start considering the CBA and the Illinois Public Labor Relations Act, how about my client's obligation under Federal law, right? The ADA commands that employers, not just in Illinois and everywhere, have to consider a reasonable accommodation for people that have disabilities, even people on temporary light duty and work comp cases. The Sears v. EEOC decree, the settlement from a class action suit about five years ago, hit Sears with a $6 million judgment because they weren't offering light duty to work comp claimants who were transitioning back to full duty. It's pretty important. So I submit to you, first, we shouldn't be considering these other statutes at all. I think the Supreme Court is telling us. Let's consider the Work Comp Act criteria for either offering or denying TTD. And if you do that in this case, you would deny TTD because work was offered and he did the job. He did the job, right, for a couple of months. So this isn't a sham offer, right? But if we're going to consider other statutes, we're going to have to consider the obligation of an employer to offer work on a light duty capacity under Federal law, which certainly isn't trumped by, I think, a public labor relations statute. And a couple of final thoughts here. The job itself that this man was doing was very productive. It was within the fire department itself. The village didn't put him in some, you know, maintenance capacity or something. He was doing ambulance checklists and stocking medical unions, coordinating Department of Health and Human Standards compliance documents and filings. These aren't sham jobs and sham duties that he was doing. It was structured. They even worked around his therapy schedule, okay? So they were working with him. He chose to not work. And, frankly, for everyone in this room, if I choose to stop working tomorrow, I don't get paid. If Mr. Cesario chose to stop working, he doesn't get paid. All right? And I think, you know, a little thread of common sense should compel the Court to not only recognize the correctness of the commission decision, but that it's the right decision, considering that a man worked light duty, was capable of it medically, there's no dispute, and it was an offer, and he could have just kept working and he chose not to. You don't get TTD when that happens. So I ask that the – I'll finish with this. There was a debate whether this is manifest weight or is a matter of law. To the extent I'm arguing we shouldn't be considering these other laws, I'm arguing it's manifest weight and the circuit court should never have reversed because we're arguing these facts about the validity of a job offer. I know Mr. Duda claims it's a matter of law and he's going to cite the statutes that we've touched on here, but I submit to you that those are not to be considered. But even if they are, they don't talk about TTD and, therefore, the commission decision should be reinstated. Thank you. Thank you, counsel. Counsel, can you respond? Good morning, Your Honors. May it please the Court, Counsel, my name is Thomas Duda and I represent Mr. Cesario in this action. And Mr. Campbell is exactly right. I am going to tell you that the standard of review is wrong as set forth by him, but I'm not going to rely on any case that I pull from my memory. I'm going to rely on his brief. Before you get into the merits, what are your thoughts about this Court's jurisdiction? I take no position. I did not agree to jurisdiction because I have no power to agree to jurisdiction. I can tell you that when the Court issued its initial order, there was a modification of the order that was made. I wasn't given notice. I filed a motion. And it's in the record. I filed a motion to vacate that second order, and then there was a third order, which is found at page 18 of the appendix, that the Court entered because my concern was I had a client who could never return to work as a firefighter, and I wanted to get a hearing on maintenance and permanency, and I didn't want to wait until this Court decided the case. Well, you stand there now. You're recognizing the issue. But you're telling us that you want to proceed. You're not objecting on a lack of jurisdiction. I have no objection to the Court remanding on jurisdiction. And I didn't stipulate the jurisdiction because I have no power to stipulate the jurisdiction. Jurisdiction is a – this Court can't confer jurisdiction. I'm glad we agree on that. With one exception, there's oddly enough an administrative review case involving a school district where there's some implication by the appellate court. But the law is that I can't – the parties and the Court itself cannot stipulate the jurisdiction. But while you're here, you're going to present an argument, right? I am here to present an argument. On the standard of review, on appendix page 29 of the appellant's brief, they quote to this Court, they actually attach the interstate scaffolding case, and on page 141 of interstate scaffolding, the Court says, since this involves interpretation of a statute and it involves application of certain facts to the interpretation of the Workers' Compact, it presents a de novo. It's an issue of law and the standard of review is de novo. We're talking about this Court. There are no dispute of facts. We're talking about this Court interpreting a contract, a statute that says that that contract takes precedence over any policy, statute, rule, regulation, or court decision once it's agreed upon by the parties. And that presents an issue of law. I'm sorry? That's what the trial court found. That is what the trial court found. Appropriate. But I want to start out with the Court. All of the argument of the village dealing with elections and what Mr. Cesario did or didn't do, I think what we need to do is start out with the collective bargaining agreement because if you read the collective bargaining agreement, it shows that the arguments are totally opposite and that the outcome is clear. The collective bargaining agreement states, quote, there shall be no light duty or temporary administrative duty provisions or assignments for employees sustaining duty injuries unless voluntarily agreed to by the employee and the village with notice of the assignment to the union. It then goes on to read, the light duty assignment shall not last for more than 45 calendar days without mutual agreement by the fire chief and the union president or their designees. All right. The facts of this case are that my client's career-ending injury happened in October of 2009. I think October 29th. He received benefits under the Public Employee Disability Act for 12 months to the end of October. Beginning on November 2, 2010, the chief approached him seeking to have him work light duty. The union actually objected from the outset to light duty being forced upon Mr. Cesario, but Mr. Cesario indeed worked light duty from November 2, 2010 until December 24, 2010. The facts kind of get in the way of the plaintiff of the appellant's argument. He worked for approximately 55 or 60 days. At that point, light duty under this provision ended unless the union, unless the union agreed to prolong the period and the union not only verbally decided not to extend the period, they did it in writing no less than two times by filing a grievance and by filing an advance of the grievance to the third step of the grievance procedure of the collective bargaining agreement. And since I knew that the counsel wasn't going to point these out, I really would suggest the court go to page 741 through 756 of the record and read the grievance filed by the union, read the response from the chief, and read the various advances of the grievance to arbitration. Arbitration has not been concluded because I don't represent the union, but there are many, many, many grievances between this employer and this union. But be that as it may, even if there was anything in the record, which there is not, that Mr. Cesario was negotiating, quote, electing light duty, he, Mr. Cesario, has no power to elect light duty. The only entity with power to extend 45 days is the union. And the record is also clear that before this contract, and this kind of makes it really, really clear, before this contract, light duty was forbidden. There was no light duty. Even if the employee wanted it. Period. There was no light duty. And the interesting thing is if you really read this provision closely, this ADA argument, it really came from left field. That was not an argument presented to the commission. I think it's waived. But if you read this, it says assignments for employees sustaining duty injuries. This clause applies only to workers' compensation injuries. If you're an Oak Lawn firefighter and you fall off your roof putting up Christmas decorations and you need to go on light duty, there's nothing in this contract that provides that the employer has to provide you any light duty. There's no ADA consequence of this provision. This provision was to give some degree of flexibility to the village to get people back to light duty. And this gives discretion to the village. It doesn't have to offer light duty. If the village decides to do it and the employee agrees for the first 45 days, fine. After 45 days, it says there shall be no light duty. Interstate scaffolding has nothing to do with this case. This case is a simple case where management negotiated under Section 7 of the Illinois Public Labor Relations Act a provision in the contract to give them a power they didn't have and now they're trying to manipulate the small power they did get to expand it. That's what's going on in this case. Since light duty did not exist after December 24, 2010, there was simply nothing for Mr. Cesario to refuse. It didn't exist. There was nothing to elect. Any question as to the enforceability of that collective bargaining clause is put to rest with Section 15 of the Illinois Public Labor Relations Act, which I had poorly paraphrased to this court earlier in my argument. It's quoted in all of the briefs, but it's clear that when an employer in a municipal setting, and of course interstate scaffolding was not a municipal case, the Illinois Public Labor Relations Act wasn't involved, anything that the parties agreed to takes precedence over any state statute. And I will tell you that with the Public Employee Disability Act, that happens all the time. I see collective bargaining agreements with police and fire where the period for PETA is expanded, contracted. There are provisions as to how it's going to be administered, so that happens all the time. So in this case, this is a simple case. There was no right duty to be refused. The Reliance Elevator argument that I made is simply a more traditional approach to calling this court's attention to the express terms of the collective bargaining agreement. The work, there was a factual dispute as to how useful the work was. That's not the point of my argument on Reliance Elevator. The point of my argument is that the contract says there's no right duty after 45 days. For Village to come up and say we've got right duty after 45 days is a sham. It is an illusion. And then the final case, and by the way, they didn't address this case in their brief. They didn't address this case in their argument. But if there weren't an Illinois Public Labor Relations Act, there is a case of Monterey Coal versus the Industrial Commission, which I cited and argued in my brief. This involved a coal miner who was on strike with the United Mine Workers for 16 weeks. And the first or second day that he returned to work, he sustained an injury. And the employer took the position that in computing his average weekly wage, the 16 weeks that he had no income should be included in the average weekly computation. And they said that this particular worker's failure to work, work was available. The only reason he didn't work is the union said that if you work, we're going to fine you and we're going to expel you and we're going to discipline you. And the Illinois Supreme Court in that case held that when a worker is compelled by his union to behave in a certain manner, which is exactly this case, the union would not extend the 45-day period. Mr. Cesario cannot be penalized for following the dictates of the collective bargaining agreement and the dictates of his union. The idea that the union agreed, again, it's in writing. Read pages 741 to 756. I think that that settles the matter. But this is a straightforward case if you get to the merits. Thank you very much for your attention. Thank you, counsel. Counsel, you may reply. A few points. To suggest that there shall be no light duty, which is what the CBA says, doesn't say that the employer isn't to offer light duty. And this isn't Orwellian like thought control. To say it vanished, it didn't exist. It did exist. Because he worked it. He worked it beyond 45 days. Well, it did exist. He's making the argument, yeah, it exists. It's a village in the employee agreement. But he doesn't have to. Exactly. Exactly. Does he have to work? No. No. Neither does any employee in the State, is my point. Okay. Nobody has to. Okay. Why is he entitled to TTD? The CBA doesn't address that at all. Under the Work Comp Statute and plenty of case law, including interstate scaffolding, which is highly relevant, I think, because they're addressing whether or not we are to consider outside statutes. Are we to consider wrongful discharge and interstate scaffolding? Are we to consider the precise issue presented here? It was not presented in interstate scaffolding, was it? Was there a collective bargaining agreement in interstate scaffolding? The CBA wasn't. But the precise issue is very important with regard to whether or not you're entitled to TTD under the Work Comp Statute. And my argument today is on a Work Comp case, you argue the Work Comp law and Work Comp statute. And that's the purview of the Workers' Compensation Commission. It really is. We are not to be considering other statutes. We're not to be considering this. If we are going to, if we're going to open that door, we cannot minimize, as Mr. Duda would want to, that my client and every client in the State of Illinois and everywhere in the country has to be very concerned with Federal employment law and Federal requirements under the ADA and making reasonable accommodations. Tell that to Sears. They paid $6 million for not doing that. And I'll go back and tell the village. Were their employees covered under a collective bargaining agreement? I'm sorry? Were their employees covered under a collective bargaining agreement? I don't know that the employee who started that was. If others were in the greater unit, we don't know that. I don't think it makes a difference to the EEOC, Your Honor. I don't think at all. One bit. And that hasn't been litigated by them. But again, that's not for the purview of this Court to determine whether the EEOC would or wouldn't decide something. And it's interesting, Mr. Duda says that there's a labor arbitration that has yet to be concluded and there's a grievance. That's where that CBA and the interpretation should be adjudicated. Not here. Here, we stick to Work Comp law. Under Work Comp law, this man could have walked in on January 4th and 5th and 6th and kept going and worked light duty. Valid job duties, a structured time frame for work that was ongoing based on the chief's testimony. There's no dispute to that. He was doing valuable work for the village. If you turn that down just because you don't feel like it and you elect vacation and sick pay, okay, you're not getting TTE then. That's Work Comp law. And interstate scaffolding is very clear on that. And I think this Court has been traditionally as well. And I ask you to consider Work Comp law when ruling on this case, particularly when the CBA doesn't address TTE at all. At all. Thank you. If there's any further questions, I'll rest. Okay. Thank you, counsel, both, for your arguments in this matter. It will be taken under advisement and a written disposition shall issue.